535 So.2d 407 (1988)
Roy TOWNSEND, PlaintiffAppellee,
v.
PITTSBURGH PLATE GLASS INDUSTRIES, INC., DefendantAppellant.
No. 87-641.
Court of Appeal of Louisiana, Third Circuit.
August 18, 1988.
Writ Denied November 28, 1988.
*408 Newman & Thibodeaux, Clifford L. Newman, Lake Charles, for plaintiff-appellee.
Stockwell, Sievert, Viccellio, Clements & Shoddock John S. Bradford, Thomas G. Henning, Lake Charles, for defendant-appellant.
Before STOKER, DOUCET and KING, JJ.
DOUCET, Judge.
Plaintiff, Roy D. Townsend, filed a worker's compensation suit on September 19, 1983 seeking benefits for injuries he received on September 20, 1982 while in the course and scope of his employment with Pittsburgh Plate Glass Industries, Inc. (PPG). The lower court found plaintiff to be permanently, partially disabled and ordered PPG to pay him worker's compensation benefits subject to a credit for amounts previously paid for compensation payments, accident and sickness benefits, and Social Security benefits. The lower court also awarded plaintiff medical expenses, penalties and attorneys fees. It is from this judgment that PPG appeals.
The facts, as set forth in the trial judge's written reasons for judgment, which we adopt as our own, are as follows:

*409 "The plaintiff alleges that he was permanently disabled or that he was permanently partially injured when he fell from a platform injuring his back and buttocks which occurred in the course and scope of his employment on or about September 20, 1982. The defendant answered denying that an accident occurred but voluntarily paid workman's [sic] compensation and medical benefits until he returned to work in November of 1982.
The facts show that Mr. Townsend was involved in an automobile accident on December 10, 1982 and he was examined and treated for injuries received. Mr. Townsend received benefits from Pittsburg Plate Glass Industries's accident and sickness plan. On September 19, 1983 the plaintiff filed his suit for workmen's compensation benefits.
Upon trial of this case it was shown that on September 20, 1982, Mr. Townsend was involved in a work related accident. He reported to Dr. Harold Lovejoy on September 20, 1982 complaining of pain in his low back in the L-3 and L-4 region. Dr. Lovejoy sent him home that afternoon and he returned the next day complaining that it was difficult to sit. Dr. Lovejoy saw Mr. Townsend on September 23rd and 24th at which time he sent him to Dr. Dale Bernauer who examined Mr. Townsend and took him off work and sent him to physical therapy. On October 12, 1982 he still complained of pain and was continued on medication. Dr. Bernauer again saw Mr. Townsend on November 2, 1982, November 9, 1982, and November 19, 1982 at which time Dr. Bernauer noted that he could return to light duty at work.
On November 15, 1982 Mr. Townsend was informed that he was expected to return to work or suffer possible disciplinary action. Dr. Lovejoy confirmed that Mr. Townsend was able to return to limited or light duty. Mr. Townsend went back to work and remained on the job until he was involved in the automobile accident of December 10, 1982. Mr. Townsend was seen by Dr. Bernauer on November 30, 1982 and he was continued on light duty. After the automobile accident Mr. Townsend was seen by Dr. Bernauer and it was indicated by Dr. Bernauer that he could continue on light duty because even though there was an aggravation of the injury it did not "dramatically" change his physical condition.
Dr. Lovejoy saw Mr. Townsend on December 8, 1982 and he noted that he still complained of pain and discomfort. Dr. Lovejoy saw Mr. Townsend on the Monday following the automobile accident and Mr. Townsend was complaining about low back pain and he was again sent to Dr. Bernauer for treatment.
After the automobile accident in December, 1982 Mr. Townsend saw Dr. Harry S. Snatic, who died before the matter was brought to trial. Dr. Snatic first saw Mr. Townsend on December 20, 1982 and treated him until April 12, 1983 when the record indicates that he was discharged. Before his death Dr. Snatic referred Mr. Townsend to Dr. George P. Schneider, an orthopedic surgeon.
Dr. Schneider testified that he examined him during the middle of April and as his treating physician took him off work in September of 1983. His diagnosis as of October 10, 1983 was that Mr. Townsend had a sprain of the low back with a superimposed sciatic nerve root irritation.
Mr. Townsend was also seen by Dr. Dean Moore and Dr. Dennis Walker. July 18, 1985 Dr. Schneider referred Mr. Townsend to Dr. Moore who found that he was walking with a slight tilt to the right and in obvious pain. He was then referred to Dr. Dennis Walker for examination and Dr. Walker felt that he needed a fusion of L-4 and L-5. Surgery was arranged but not performed because no one would stand good for the cost surgery.
As stated before, Mr. Townsend worked from April, 1983 until September, 1983. He began to receive accident and sickness benefits for disability and continued to receive these benefits until December 12, 1984. He was later discharged by the company on September 13, for the stated reason that he was off *410 duty due to illness for a period exceeding two (2) calendar years.
The plaintiff testified that his principle duties as a painter required that he do a lot of climbing, squatting and generally heavy work. This fact was confirmed by other lay witnesses. Up until the last day that Mr. Townsend performed his assigned job he was considered to be on light duty; however, the work assigned required a physical performance beyond his capabilities because of pain in his back."
Defendant, PPG, specifies six assignments of error, the first two being that the trial court erred in finding that plaintiff proved by a preponderance of the evidence that he was disabled and that such disability was causally connected to a work related injury. We disagree.
It is uncontroverted that plaintiff injured himself in the course and scope of his employment with PPG on September 20, 1982. Plaintiff was examined and treated by several doctors in connection with the accident. These doctors testified at trial regarding plaintiff's physical condition. Additionally, co-workers, relatives and friends testified as to plaintiff's physical condition after the September 20, 1982 accident.
Ms. Ella Green, a co-worker of plaintiff's, testified that she noticed that as a result of the accident, plaintiff was dizzy and weak and was in a great deal of pain while on light duty work.
Wade Johnston, a self-employed carpenter, testified that he worked with plaintiff after the September 1982 accident but before the December 1982 automobile accident. Johnston observed that plaintiff was unable to do any lifting or climbing and that plaintiff conveyed to him that his back was bothering him.
Benjamin Ned, plaintiff's brother-in-law and coworker, testified that plaintiff was healthy before the accident and that after the September accident plaintiff could not walk properly because of pain in his back area. Additionally, Mr. Ned testified that he observed plaintiff on the night before the December automobile accident and that he could neither stand nor sit for any length of time due to pain that he was experiencing.
Hilton Bellow, an insulator at PPG, testified that he saw plaintiff in between the two accidents and that plaintiff would walk as if one leg was shorter than the other. Bellow added that plaintiff complained to him that he was in pain and that from observance it was obvious that "something was wrong."
Gilda Townsend, plaintiff's wife, testified that from the date of the first accident, plaintiff was always "slumped" and hurting. Ms. Townsend added that plaintiff could not sit or stand for very long and could not bend like a normal person. Ms. Townsend stated that the problems plaintiff was faced with were not much different before and after the second accident. Moreover, Ms. Townsend testified that the complications that plaintiff suffered were caused before the automobile accident.
Plaintiff testified that his duties at PPG consisted of painting tanks, piperacks, etc... and sandblasting. Plaintiff stated that before the first accident he felt good physically and had no problems with his back or leg. Plaintiff added that after he fell off of the platform, he experienced pain in the low part of his back, concentrated mostly on the right side. Moreover, plaintiff related that he saw several doctors in connection with his injuries and that he had to undergo physical therapy and take pain medication. Plaintiff also testified that while he was hurt in the automobile accident, his physical condition had not substantially changed after the second accident. Plaintiff added that he returned to employment after the second accident but had to quit because he was still experiencing back pain and started to have problems with his right leg and foot. Plaintiff testified that he was in need of surgery, and indeed, surgery was scheduled on two different occasions but had to be cancelled due to PPG's denial of coverage and payments.
Dr. George P. Schneider, an orthopedic surgeon, examined plaintiff on October 10, 1983. At this time plaintiff complained of *411 pain in his back and stated that after his first accident, his right, lower extremity would tire easily. Dr. Schneider, upon examination, opined that plaintiff had a slight pelvic tilt to the right with a compensatory, slight shift of trunk. Additionally, Dr. Schneider was of the opinion that plaintiff had a sprain of the lower back and had an indication of superimposed sciatic nerve root irritation to the right lower extremity. Dr. Schneider saw plaintiff again on December 19, 1983, February 23, 1984 and March 15, 1984. On all of these occasions, plaintiff continued to complain of back pain. Dr. Schneider added that he had no reason to question plaintiff's veracity regarding his physical condition and that in his opinion the problems were related to the September accident. Dr. Schneider hospitalized plaintiff from April 16, 1984 to April 19, 1984 for testing. Several tests were done and a tomogram indicated the presence of changes in the joints about the lumbosacral articulation. Dr. Schneider added that the tests indicated that there was some spurring (thickening) present and that there was a sclerosis which showed up in the X-ray study itself. Dr. Schneider added that this is indicative of degenerative changes developing in these joint levels. Dr. Schneider hospitalized plaintiff again on June 26, 1984. At this time, it was still his opinion that plaintiff had a right lower lumbar disc syndrome. Dr. Schneider saw plaintiff after the June hospitalization and believed that plaintiff should have a disc exploration, a nerve root exploration and a fusion of the lumbosacral joint.
Dowell Fontenot, a physical therapist, treated plaintiff for a total of eight weeks. Mr. Fontenot testified that overall, during his treatments, there was no great progress or increase in range of motions and that plaintiff never reached a grade that could be considered normal. Mr. Fontenot testified that, on the very morning of the second accident (before the accident), plaintiff complained of pain when bending.
Dr. Dennis M. Walker, an orthopedic surgeon, examined plaintiff on July 31, 1984 upon referral by Dr. Dean Moore. Dr. Walker opined that plaintiff had a degenerative disc disease and may have a sciatic neuritis. Dr. Walker indicated, however, that he needed to further evaluate plaintiff through tests such as a nerve conduction study. Dr. Walker added that the problem that plaintiff was experiencing could be related to a traumatic experience. Dr. Walker also testified that he would defer to plaintiff's treating physicians. Finally, Dr. Walker added that he saw nothing to indicate that plaintiff was trying to deceive him.
Dr. R. Dale Bernauer, an orthopedic surgeon, first examined plaintiff on September 22, 1982. Dr. Bernauer believed that plaintiff had a lumbar strain and placed him on physical therapy and anti-inflammatory medications. Dr. Bernauer also advised plaintiff to stop working. Dr. Bernauer saw plaintiff again on October 12, 1982 and at this time plaintiff was still complaining of pain in his back. Plaintiff returned for treatment on November 9, 1982, and was complaining of intermittent pain. Plaintiff saw Dr. Bernauer once again on November 19, 1982. Dr. Bernauer released plaintiff to light work duty on November 22, 1982. On November 30, 1982 plaintiff reported to Dr. Bernauer that he was feeling a bit better. Dr. Bernauer continued him on light duty work at this time. On December 14, 1982, plaintiff again saw Dr. Bernauer and at this time informed the doctor that he had been involved in an automobile accident. Plaintiff also informed the doctor that the pain in his back had worsened a bit as a result of the second accident. Upon examination, Dr. Bernauer found that he had a decreased motion in his back. Dr. Bernauer also testified that X-rays taken after the second accident revealed no change in his condition. Plaintiff continued on light work duty. It was Dr. Bernauer's opinion that while plaintiff had some aggravation of his pre-existing condition as a result of the automobile accident, the auto accident did not substantially worsen his condition. Finally, Dr. Bernauer testified that he never got the impression that plaintiff was being dishonest with him.
Dr. Dean Moore, a neurosurgeon, first saw plaintiff on July 18, 1984. Plaintiff's chief complaints were low back and right *412 leg pains. Dr. Moore testified that at this time, it was obvious to him that plaintiff was in discomfort. Dr. Moore opined that plaintiff was either suffering from a herniated disc or some degenerative spurring pressing on the S-1 nerve root. Plaintiff visited Dr. Moore again on July 26, 1984 with the same complaints as the first visit. Dr. Moore felt that plaintiff required a laminectomy and a fusion and recommended Dr. Dennis Walker for the surgery. Dr. Moore saw plaintiff on August 7, 1984, November 8, 1984, December 18, 1984, January 28, 1985, and then continuously for about every two months until October 22, 1984. Plaintiff had, generally, the same complaints each time. Dr. Moore testified that in his opinion, the first accident was the root of plaintiff's problem, but that he would defer to Dr. Bernauer as to what injuries were attributable to the second accident. Dr. Moore tried to set up surgery but could not because he could not get verification of payment. Finally, Dr. Moore testified that plaintiff never gave him any reason to question his veracity.
Dr. Norman P. Morin testified that he examined plaintiff and would defer to plaintiff's treating physician regarding his physical condition and its causation.
In light of the foregoing evidence presented, we find that the lower court did not err when it found that plaintiff was disabled and that such disability was causally connected to a work related injury. As such, we will not disturb the lower court's findings with respect to these issues on appeal.
In plaintiff's third assignment of error, he asserts that "The trial judge erred in failing to find that Mr. Townsend's settlement with State Farm Mutual Automobile Insurance Company of his personal injury arising out of the automobile accident of December 10, 1982 did not forfeit his right to future compensation and medical expenses under the Louisiana Worker's Compensation Act." We disagree.
La.R.S. 23:1101 and La.R.S. 23:1102 provide that if an employee brings suit against a third person for which an injury is compensable under the Louisiana Worker's Compensation Act, the employee shall notify the employer in writing of such fact so that the employer may intervene as a party plaintiff. The statutes further provide that if a compromise with such third person is made by the employee, the employer shall be liable for compensation in excess of the amount recovered against such third person only if written approval of such compromise is obtained from the employer or insurer by the employee at the time or prior to such compromise. Thus, if the employee fails to notify the employer or insurer of a suit against a third person, or fails to obtain written approval for the compromise from the employer and insurer, the employee forfeits the right to future compensation, including medical expenses.
The above statutes contemplate the situation where a third person causes injury and such injury is compensable under the Louisiana Worker's Compensation Act. Such is not the case here. In the instant situation, plaintiff was injured in a work related accident and began receiving worker's compensation benefits. Plaintiff was subsequently involved in an automobile accident which was not job related. The work related accident, not the automobile accident, was the cause of plaintiff's disabling injury. Thus, the aforecited statutes are inapplicable since any injuries that plaintiff may have received in the automobile accident are not compensable under the Louisiana Worker's Compensation Act as required by the above statutes. Thus, this contention is without merit.
Appellant next urges that "The trial court erred in finding that PPG was not entitled to a credit of $12,000 which was a settlement Mr. Townsend received from State Farm in settlement of his personal injury suit arising out of the December 10, 1982 accident." We disagree.
Appellant contends that it is entitled to a credit of $12,000 because this was the settlement amount from State Farm due to the automobile accident which is the cause of plaintiff's alleged disability. As previously stated, plaintiff's disability was not caused by the automobile accident, thus, this contention is without merit.
*413 In appellant's fifth assignment of error, it urges that the "Trial Judge erred in finding that Mr. Townsend proved by a preponderance of the evidence that Dr. Snatic's medical bills were attributable to the September 20, 1982, work accident." We agree.
Dr. Snatic treated plaintiff and there are medical bills outstanding as a result of this treatment. Dr. Snatic passed away before the trial on the merits, thus, the only evidence with respect to the charges are copies of Dr. Snatic's reports, his bills and plaintiff's testimony. There is simply no evidence as to which proportion of the bill due Dr. Snatic is attributable to injuries received in the job related accident and which proportion of the bill is related to injuries received in the automobile accident. Plaintiff even testified that he could not differentiate which proportion of the bill was for injuries received in the job related accident and which proportion of the bill was for injuries received in the automobile accident. In light of the aforementioned, we find that the trial judge erred when it found that $1,160.00 was attributable to the work related accident and awarded such amount to plaintiff. Thus, we deny plaintiff this amount on the basis that he failed to prove by a preponderance of the evidence that such amount was attributable to the work related accident.
We reject appellant's contention that the trial court erred when it concluded that PPG was not entitled to a credit of $2,000 paid by State Farm as a result of the automobile accident. As previously stated, the work related accident, not the automobile accident, was the cause of plaintiff's disabling injury. The $2,000 payment was made as a result of the tort claim which arose out of the automobile accident. Thus, PPG is not entitled to a credit for such amount.
In appellant's final assignment of error, it contends that the trial court erred in awarding penalties and attorney's fees to plaintiff. We disagree.
As correctly stated by the trial judge in his written reasons for judgment:
"The testimony shows that the employer paid compensation or full wages up to the time that Mr. Townsend went back to work before the automobile accident December 10, 1982. He was allowed to return to work on light duty by his attending physician and was seen after this automobile accident by the same physician who indicated little change in his condition due to the accident. He again returned to his employment and attempted to perform but had to quit work in September of 1983. He chose to receive and the company paid his benefits under the accident and sickness policy of the company. However, at the end of the accident and sickness benefit period the company refused to pay any further compensation. It is clear that the recurring condition of the employee made it necessary to return to the treating physician and to other physicians who were seen by referral. The plaintiff continually sought treatment for the pain in his back.
These facts were brought to the attention of the employer through the claim for benefits under the accident and sickness policy provided. The company apparently refused to pay further compensation or attempt to have the employee re-examined to determine if they should resume payments.
The law requires more affirmative action on the part of the employer or its insurer to determine compensation due for the loss of wages of the employee and in this case the defendant was arbitrary and capricious in their action."
As such, we will not disturb the lower court with respect to this issue on appeal.
Accordingly, for the reasons assigned, the judgment of the lower court is amended so as to deny plaintiff the amount of outstanding medical bills due Dr. Harry Snatic. The judgment of the lower court is affirmed in all other respects.
AFFIRMED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.