843 So.2d 1245 (2003)
Gwendolyn CHELETTE
v.
RIVERWOOD INTERNATIONAL USA, INC.
No. 02-1347.
Court of Appeal of Louisiana, Third Circuit.
April 30, 2003.
*1247 Larry B. Minton, Attorney at Law, Alexandria, LA, for Gwendolyn Chelette.
Lawrence Bernard Frieman, Juge, Napolitano, Leyva, Metairie, LA, for Riverwood International USA, Inc.
Court composed of Chief Judge NED E. DOUCET JR., SYLVIA R. COOKS, and JOHN D. SAUNDERS, Judges.
JOHN D. SAUNDERS, Judge.
Claimant was injured while in the course and scope of her duties with employer, Riverwood International USA, Inc. Following her injury, she was treated, released to sedentary work, and subsequently began collecting supplemental earnings benefits. Defendant, Riverwood, terminated those benefits. Claimant subsequently filed a disputed claim for compensation form with the Office of Workers' Compensation Administration, alleging wrongful termination of benefits. The hearing officer ordered that claimant's benefits be reinstated and, additionally, ordered Defendant to pay penalties and attorney's fees. Defendant now appeals that judgment.

FACT AND PROCEDURAL HISTORY
Claimant, Gwendolyn Chelette, was employed as a machine operator with Defendant, Riverwood International USA, Inc. (Riverwood). Her employment with Riverwood began in 1983. On February 6, 1995, Ms. Chelette injured her right shoulder while in the course and scope of her employment. At that time, her average weekly wage was $367.00. As a result of *1248 the injury, Ms. Chelette underwent two surgeries to her right shoulder.
On May 22, 1996 and May 24, 1996, Ms. Chelette underwent a Functional Capacity Evaluation (FCE) at Louisiana Physical Therapy Center. The results showed that Ms. Chelette was functioning at a sedentary to light level with restrictions on overhead activities and repeated reaching. Based on the results of the FCE, Dr. Lee Leonard, Riverwood's choice orthopaedic surgeon, stated that claimant had reached maximum medical improvement (MMI) and that she could lift ten to twenty pounds frequently, and twenty five to fifty pounds occasionally. Dr. Chris Rich, Ms. Chelette's orthopaedic surgeon, also placed claimant at MMI, with physical restrictions in accordance with the FCE evaluation.
Ms. Chelette began collecting supplemental earnings benefits (SEB). Having been released to return to work, vocational rehabilitation efforts were undertaken to identify suitable employment within Ms. Chelette's physical restrictions.
On October 28, 1996, Kenneth Brister performed an initial vocational evaluation of Ms. Chelette on behalf of Riverwood. Mr. Brister provided vocational rehabilitation consultation on behalf of Riverwood until March 24, 1999. He identified approximately nineteen jobs that he believed were suitable for Ms. Chelette. Sixteen of the nineteen jobs were ultimately approved by Dr. Rich. As Mr. Brister located jobs, he notified Mr. Hennigan, Ms. Chelette's then counsel of record, of their availability. Mr. Brister also transmitted a letter to Dr. Rich, Ms. Chelette's primary treating physician, to notify him of job availabilities because it was required that Dr. Rich approve the jobs before Ms. Chelette could perform any of them. Dr. Rich routinely approved the jobs identified. Mr. Brister testified that all of the positions were open at the time he notified the parties of the job availabilities, prior to Dr. Rich's approval of the jobs. However, Mr. Brister could not show that the jobs remained available after Dr. Rich approved them.
Because Ms. Chelette failed to obtain a position, despite the availability, Riverwood reduced claimant's benefits on February 25, 2000, taking a minimum wage offset of forty hours per week. Her weekly workers' compensation benefits were reduced from $367.00 per week to $107.33 per week. Ms. Chelette filed a Disputed Claim for Compensation on April 28, 2000, claiming wrongful termination of benefits.
A hearing was held on May 7, 2002. Judgment was rendered in favor of Ms. Chelette on June 27, 2002. In written Reasons for Judgment, the Workers' Compensation Judge (WCJ) analyzed the facts of the case in accordance with prevailing jurisprudence, and found that Riverwood failed to establish that, at the time of reduction of the benefits, any of the jobs set forth were available to the claimant. Particularly, Riverwood failed to set forth that the jobs were available at the time they were approved by Dr. Rich, claimant's physician.
The WCJ found that Riverwood failed to establish job availability, thus, it unreasonably reduced Ms. Chelette's benefits. Because the reduction of Ms. Chelette's benefits was unreasonable, the WCJ imposed a $2,000.00 penalty on Riverwood and ordered that it pay attorney fees in the amount of $4,500.00. Riverwood now appeals the trial court's ruling, specifically its interpretation of the jurisprudence applied to this case, its decision to impose a $2,000.00 penalty, and a its failure to address a credit issue.

ISSUES PRESENTED FOR REVIEW
On appeal, the Defendant, Riverwood, presents the following issues for review:

*1249 (A) Does the prevailing jurisprudence of Banks v. Industrial Roofing & Sheet Metal Works, Inc., and East-Garrett v. Greyhound Bus Lines conflict, making East-Garrett inapplicable to the criteria established in Banks?

(B) Has Riverwood fulfilled each Banks requirement?
(C) Did the trial court err in assessing Riverwood with a $2,000.00 penalty?
(D) Did the trial court err in failing to assess a credit to Riverwood based on the claimant's receipt of a tort settlement?

LAW AND ANALYSIS
A. Does the prevailing jurisprudence of Banks v. Industrial Roofing & Sheet Metal Works, Inc., and East-Garrett v. Greyhound Bus Lines conflict, making East-Garrett inapplicable to the criteria established in Banks?

Supplemental earnings benefits are awarded when a work-related injury prevents the claimant from earning ninety percent of his pre-injury wages. La.R.S. 23:1221(3). The amount of SEB is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly earning capacity. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551; La.R.S. 23:1221(3)(a).
Once the claimant has met this initial burden of proving entitlement to SEB, the burden of proof shifts to the employer if it wishes to prove the employee is earning less than he or she is able to earn. The employer bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in the employee's or the employer's community or reasonable geographic region. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989).
In Banks, 696 So.2d at 557, the Louisiana Supreme Court concluded that "an employer may discharge its burden of proving job availability by establishing, at a minimum, [three criteria] by competent evidence." The employer must show:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
Id.
Later, in 1999, this court decided East-Garrett v. Greyhound Bus Lines, 99-421 La.App. 3 Cir. 11/3/99); 746 So.2d 715, which co-exists with Banks and clarifies the Banks criteria. In East-Garrett, we stated:
We find that it is implicit in the holding of Banks that the employer must establish that the jobs are still in existence when it is determined that they are within the employee's capabilities. Otherwise, the employee may be put in a position of having to apply for jobs that she might not be capable of performing, essentially a vain and useless act.
Id. at 721.
In the present case, the claimant was collecting SEB when her benefits were reduced by Riverwood. Therefore, claimant's *1250 entitlement to SEB is not at issue and the burden shifts to Riverwood to show that reduction of benefits was warranted. The WCJ analyzed the facts of the case in accordance with Banks and East-Garrett, and found that Riverwood improperly discontinued claimant's benefits because they failed to establish that, at the time of the reduction of benefits, any of the jobs set forth at trial were available to the claimant. Particularly, they did not establish the availability of the jobs after claimant's treating physician, Dr. Rich, had approved them.
On appeal, Riverwood asserts that the trial court erred in applying East-Garrett to the criteria of Banks. Riverwood argues that Banks and East Garrett cannot co-exist because applying East-Garrett to Banks creates tension between the first and third Banks requirement. Because this is a question of the application of legal principles, the standard of review of this court on this issue will be de novo. McAllister v. Coats, 96-1069 (La.App. 1 Cir. 3/27/97); 691 So.2d 305, writ denied, 97-1356 (La.9/5/97); 700 So.2d 513.
Riverwood argues that East-Garrett should not co-exist with Banks because East-Garrett implies that Banks requires subsequent physician approval to define the contours of an injured worker's "physical capabilities" as opposed to the physical limitations imposed by the physician on the injured worker when discharged or declared to be at MMI. Riverwood asserts that to require physician approval of the job analysis before a job can be considered "available" and within the employee's "physical capabilities" results in tension between the first[1] and third[2]Banks requirement. Specifically, East-Garrett suggests that "physical capabilities" are not established when assigned, but rather when the physician has reviewed and approved the job analysis. However, according to Riverwood, in the time it takes for the physician to approve the job, the jobs may become "unavailable" to the claimant. Thus, conditioning availability on the physician's approval makes compliance with the first and third Banks requirement very difficult.
We disagree with Riverwood's assertion. We find no tension between Banks and East-Garrett. Further, we find that fulfilling both criteria one and three of Banks is not "very difficult", and does not place an undue burden on the employer. In order to fulfill all three criteria of Banks while adhering to East-Garrett, a vocational rehabilitation expert is simply required to make an appointment with the treating physician for the purpose of having the jobs he has identified either approved or disapproved. At that point, the vocational rehabilitation expert should contact the employer prior to or on the day of his meeting with the physician. If he does these things, the information of job availability will not be stale, and the employee will not be sent to interview for jobs beyond his or her physical capabilities. Performing these tasks makes fulfilling both criteria one and three of Banks quite simple.
Both cases work together to protect both the employer and the claimant during the vocational rehabilitation process. Physician approval of a position prior *1251 or to the employee attending an interview is a necessity. If the employee is sent on a job interview for a position not within his or her physical restrictions, the employee may ultimately be subjected to an unfit work environment. An unfit work environment may aggravate the employee's condition and subject him to further injury, possibly rendering he or she incapable of any type of work. In this instance, the employer will ultimately be liable to claimant for further benefits because, although the employee was originally capable of working in a specific environment, he or she was put into an environment that was unfit which aggravated the claimant's condition. Clearly, prior physician approval acts as a safeguard to protect both the employer and the employee in the vocational rehabilitation process. Rehabilitation is an important part of the workers' compensation law and physician oversight is an important part of the claimant's rehabilitation. The vocational rehabilitation specialist has a duty to perform the necessary steps to ascertain the needed information from the physician within a reasonable time.
Accordingly, for the reasons above, we find that Riverwood's argument that Banks and East-Garrett cannot co-exist is without merit. We hold that the principles of both Banks and East-Garrett are a necessary safeguard and are applicable to the case sub judice.
B. Has Riverwood fulfilled each Banks requirement?
On appeal, Riverwood asserts that it fulfilled each Banks requirement. Therefore, reduction of claimant's benefits was justified. The trial court held that the Banks criteria were not established by Riverwood, therefore, reduction of claimant's SEBs was unreasonable. Because this issue addresses factual findings of the trial court, we will use the "manifest error" standard of review. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the case sub judice, it is undisputed that Kenneth Brister, the vocational rehabilitation expert, identified numerous jobs within Ms. Chelette's physical capabilities and geographic region. Then, he notified Mr. Hennigan, claimant's counsel of record. Mr. Brister also immediately transmitted letters to Dr. Rich, claimant's physician, for his review. Riverwood claims that at the time Mr. Brister notified Dr. Rich of the jobs, they were available, satisfying Banks.
As stated above, in accordance with East-Garrett, implicit in the "availability" requirement of Banks is physician approval. Therefore, the WCJ found that efforts to obtain the required physician approval were not made in this instance. The WCJ held that without physician approval, the jobs sought out by Mr. Brister could not be deemed "available" to the claimant. For the that reason, Riverwood failed to fulfill the third Banks criteria.
We agree with the trial court and hold that because the jobs identified were not approved by Dr. Rich, they were not deemed "available" under the Banks criteria. Accordingly, Riverwood failed to establish the three criteria of Banks needed in order to show that reducing claimant's SEB was warranted.
C. Did the trial court err in assessing Riverwood with a $2,000.00 penalty?
Within the WCJ's reasons for judgment, he found that the reduction of claimant's SEBs by Riverwood was unreasonable and assessed a $2,000.00 penalty against it.
On appeal, Riverwood argues that there is no statutory provision authorizing *1252 the assessment of penalties against an employer in the instant case. Riverwood asserts that this court should adhere to La. R.S. 23:1201.2 which states:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.
Riverwood argues that this provision only provides for an award of attorney's fees and does not authorize the imposition of penalties. Riverwood cites the jurisprudence of both East-Garrett, 99-421, 746 So.2d 715 and Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, as evidence that La.R.S. 23:1201.2 should be applied in this case. Specifically, Riverwood points to the language of Williams, 737 So.2d at 45, wherein the supreme court stated:
In the present case, the self-insured employer commenced paying compensation and medical benefits, apparently in good faith, soon after plaintiff notified the employer he had injured his back on the job. Thus benefits were commenced timely as required by La.R.S. 23:1201(B), and the only statute at issue in this case is La.R.S. 23:1201.2.
(Emphasis added by Riverwood).
In reviewing the award for statutory penalties, we recognize that a WCJ is given great discretion in determining that penalties are due. Miller v. Byles Welding & Tractor Co., 96-164 (La.App. 3 Cir. 6/5/96); 676 So.2d 665. After review of the penalties assessed by the trial court, we affirm. We disagree with Riverwood's argument that penalties are inappropriate in the instant case. This case involves reduction of benefits as a result of improper vocational rehabilitation services. We have held in the past that when the employer's vocational rehabilitation is improper, and as a result, the employer terminates or reduces benefits, the employer may be assessed penalties under La.R.S. 23:1201(F)[3]. Leger v. Young Broadcasting, Inc., 98-572 (La.App. 3 Cir. 10/28/98); 720 So.2d 817, writ denied, 98-2953 (La.2/5/99); 738 So.2d 1.
In Leger, the defendant placed the claimant on SEB, and then began vocational rehabilitation services. The employer subsequently terminated the claimant's benefits on the basis on three labor market surveys that identified several jobs that allegedly paid in excess of 90% of Mr. Leger's pre-injury average weekly wage. We found that the surveys prepared by the vocational rehabilitation specialist were unreliable and did not adequately show that any jobs existed that paid in excess of 90% of Mr. Leger's pre injury wage. Accordingly, we found that the employer's vocational rehabilitation amounted to no more than "sham rehabilitation." This occurs when the employer creates the practice of using vocational rehabilitation consultants to provide "sham rehabilitation" while simultaneously using the rehabilitation specialist to defeat the injured party's claim.
*1253 Likewise, we find that "sham rehabilitation" occurred in the instant case. After Ms. Chelette was injured during the course and scope of her employment, it was Riverwood's responsibility to provide her with adequate vocational rehabilitation. Riverwood failed to do so. Riverwood initially provided Ms. Chelette with benefits that she depended on, then significantly reduced her benefits, claiming the availability of a job she could perform, a job that Riverwood did not show was actually available to her.
Mr. Brister, the vocational rehabilitation specialist employed on behalf of Riverwood, knew that Ms. Chelette's physician Dr. Rich needed to approve a job before Ms. Chelette could perform it. Knowing that, Mr. Brister chose only to send a letter of correspondence to Dr. Rich identifying positions allegedly "available" to Ms. Chelette. He did not personally contact Dr. Rich nor display any sense of urgency in obtaining Dr. Rich's approval. Instead, he let the information pertaining to the jobs he had identified become stale. This conveniently allowed Riverwood a basis to simultaneously defeat Ms. Chelette's claim for SEB by alleging that the rehabilitation specialist had identified numerous positions available to her.
Ms. Chelette had absolutely no control over the time frame that jobs were approved by Dr. Rich, however, we find that Riverwood's vocational rehabilitation specialist did, and he chose not to personally contact Dr. Rich at any time. Mr. Brister could not even be bothered to place a simple telephone call to Dr. Rich. Yet, Ms. Chelette was punished by Riverwood for Mr. Brister's inadequacies in performing vocational rehabilitation. For these reasons, we find Riverwood was arbitrary and capricious in reducing Ms. Chelette's benefits, and hold that penalties are warranted. Therefore, we affirm the judgment of the trial court assessing $2,000.00 in penalties to Riverwood.
D. Did the trial court err in failing to assess a credit to Riverwood based on the claimant's receipt of a tort settlement?
Finally, Riverwood argues that the trial court erred in failing to hold that it is entitled to a credit based on Chelette's receipt of settlement fund stemming from a subsequent motor vehicle accident that aggravated her work related injury. Nearly two years after Ms. Chelette's on the job injury, she was involved in a motor vehicle accident. At trial, Riverwood asserted that, because Mr. Chelette's condition was aggravated by the automobile accident, it is due an offset of the funds she received in the settlement of the claim. In its argument, Riverwood refers to La.R.S. 23:1101(C) and 1102. These statutes provide that if an employee compromises a claim with a third person for injury which is compensable under Louisiana Workers' Compensation Act, the employer will only be liable for compensation in excess of the amount recovered against that third person if written approval of the compromises is obtained from the employer at the time of or prior to the compromise. See La. R.S. 23:1101(C) and 1102.
At trial Riverwood presented a letter written by Mr. Hennigan, Ms. Chelette's attorney for her automobile accident, to Dr. Ratnam Nagalla on November 16, 1998. This letter stated that, prior to the automobile accident, Ms. Chelette had limited use of her right arm, but the accident had caused pain in the top of her shoulder and in the joint. According to Riverwood, this letter serves as evidence that Ms. Chelette's condition was aggravated by the accident, and that they are due an offset.
We disagree with Riverwood. We have dealt with this issue before in a case factually *1254 similar to the one at issue. In Townsend v. Pittsburgh Plate Glass Industries, Inc., 535 So.2d 407 (La.App. 3 Cir.), writ denied, 536 So.2d 1200 (La.1988), the claimant injured his back in the course and scope of his employment in September 1982. Later, in December 1982, claimant was injured in a automobile accident that aggravated his preexisting condition, but did not dramatically change his physical condition. The employer asserted that it was due an offset in the amount of $12,000.00 for settlement funds collected pursuant to the automobile accident. In that case, we noted:
[La.R.S. 23:1101 and 1102] contemplate the situation where a third person causes injury and such injury is compensable under the Louisiana Worker's Compensation Act. Such is not the case here. In the instant situation, plaintiff was injured in a work related accident and began receiving worker's compensation benefits. Plaintiff was subsequently involved in an automobile accident which was not job related. The work related accident, not the automobile accident, was the cause of plaintiff's disabling injury. Thus, the aforecited statutes are inapplicable since any injuries that plaintiff may have received in the automobile accident are not compensable under the Louisiana Worker's Compensation Act as required by the above statutes.
Id. at 412
Likewise, in the instant case, Ms. Chelette's injury was the result of work a related accident. Although a subsequent automobile accident may have aggravated Ms. Chelette's pain, there has been no evidence to suggest that it limited her ability to return to work. As in Townsend, the work-related injury, not the automobile accident, caused the claimant to suffer a disabling injury. Further, as in Townsend, La. R.S. 23:1101 and 1102 are inapplicable to the case sub judice because the injuries Ms. Chelette received in the automobile accident are not compensable injuries under the Louisiana Workers' Compensation Act.
Although Riverwood cites jurisprudence suggesting that it is due an offset, we find that because the facts of Townsend are more factually similar to the case sub judice than any jurisprudence cited by Riverwood in its appeal brief, Townsend's holding should be applied. For these reasons, we find that the trial court did not err when it failed to grant Riverwood an offset against benefits paid in the amount of Ms. Chelette's tort claim settlement.

DECREE
For the reasons stated herein, we affirm the judgment of the trial court holding that claimant is entitled to supplemental earnings benefits at zero wage earning capacity from February 25, 2000, through this date and forward, with legal interest on back due benefits. We also affirm the judgment of the trial court assessing penalties in the amount of $2,000.00 and attorney's fees in the amount of $4,500.00 to claimant as a result of Riverwood's unreasonable reduction in claimant's workers' compensation benefits. Accordingly, costs of this appeal are assessed to Defendant, Riverwood.
AFFIRMED.
NOTES
[1] The first criteria of Banks requires that employer show, "the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region." Banks, 96-2840 p. 10; 696 So.2d at 557
[2] The third criteria of Banks requires that the employer show, "an actual position available for that particular job at the time that the claimant received notification of the job's existence." Id.
[3] La.R.S. 23:1201(F) states in pertinent part:

Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.