747 So.2d 153 (1999)
MANPOWER TEMPORARY SERVICES, Plaintiff-Appellant,
v.
Donald LEMOINE, Defendant-Appellee.
No. 99-636.
Court of Appeal of Louisiana, Third Circuit.
October 20, 1999.
*154 Pierre M. Legrand, Metairie, for Manpower Temporary Services.
*155 Joseph Blaise Treuting, Marksville, for Donald Lemoine.
Before THIBODEAUX, PETERS, and GREMILLION, Judges.
GREMILLION, Judge.
The plaintiff, Manpower Temporary Services, appeals a judgment of the workers' compensation judge awarding the defendant, Donald Lemoine, continuing supplemental earnings benefits (SEB) and continuing vocational rehabilitation services, and granting Manpower a week for week credit for past temporary total disability benefits (TTD) paid against future SEB owed. We affirm.

FACTS
Lemoine, who was employed by Manpower as an electrician, suffered a work-related injury on December 3, 1994, while working for E.P. Breaux Contractors at the Grand Casino Avoyelles in Marksville. After being diagnosed by Dr. Thomas Bertuccini, a neurosurgeon, with a herniated disc at the L4-5 disc level, Lemoine underwent surgery on March 14, 1995. Although the microdiscectomy reduced his pain, he continued suffering persistent lower back pain and a burning sensation in his right leg. An MRI revealed post-surgical changes at the L4-5 disc level with epidural fibrosis or scar tissue on the right, but no evidence of a recurrent disc herniation.
Dr. Clifton Shepherd, an orthopedic surgeon, examined Lemoine at the request of Manpower's workers' compensation insurer, CNA Insurance Company. After detecting no objective findings of neurologic deficit, he assigned Lemoine a ten percent whole body impairment rating and recommended a permanent restriction from heavy manual labor. Dr. Shepherd found Lemoine capable of returning to light to moderate work activities.
A February 1996 functional capacity evaluation determined that Lemoine was capable of functioning at a medium to heavy work level. It found that Lemoine could lift from floor to waist: sixty pounds infrequently, fifty pounds occasionally, twenty-five pounds frequently, and seventeen pounds constantly. His functional capabilities were limited by a low endurance for forward bending, crouching, kneeling, repetitive squatting, and ladder climbing. He had decreased trunk flexibility for activities requiring sustained trunk extension and low endurance due to deconditioning for climbing ladders and stairs.
On April 25, 1996, Manpower filed a disputed claim for compensation disputing the cause and extent of Lemoine's disability, his medical treatment, and his entitlement to disability benefits. Lemoine answered this claim and filed an exception of no cause of action, which was later denied by the workers' compensation judge.
A labor market survey conducted at the request of Manpower identified nine position in Alexandria which were within Lemoine's capabilities. Nancy Favaloro, the vocational rehabilitation counselor, obtained approval from Dr. Bertuccini and Dr. Shepherd for five of these positions. Lemoine obtained a list of these positions from his attorney.
A two-day hearing was held in this matter beginning on November 21, 1996, before the Honorable Amiee Lirette Johnson. At the close of evidence, she issued oral reasons finding that Lemoine had suffered a work-related injury, he was entitled to TTD benefits from December 3, 1994 through the date of the hearing, and, although he was unable to return to his former employment, he was released to light to moderate duty. Accordingly, the workers' compensation judge held that vocational rehabilitation services were in order.
In awarding Lemoine SEB at the full TTD rate, the workers' compensation judge found credible Lemoine's testimony that he was presented with a list of positions, but was unable to secure any employment therefrom. She held that he *156 should be given the opportunity to seek employment from a list of positions compiled in a second labor market survey, received by him at the hearing. The workers' compensation judge further awarded Lemoine continuing vocational rehabilitation services if required and decreed that the vocational rehabilitation counselor should locate potential positions in the Marksville area. She informed Lemoine that she expected him to make a good faith effort while searching for employment. She placed the same burden upon Manpower in assisting him with his search. The workers' compensation judge threatened to terminate Lemoine's benefits if he failed to make a good faith effort. She ordered the parties to return to court in thirty days for a follow-up hearing. An interim order containing these findings was issued by the workers' compensation judge on December 18, 1996.
Following this hearing, the vocational rehabilitation counselor forwarded a list of six positions located in Alexandria to Manpower. On December 9, 1996, she notified Manpower about two additional positions located in or near Marksville.
Subsequent to the hearing, Lemoine continued suffering persistent lower back and leg pain as a result of his work-related injury. Dr. Bertuccini recommended physiatric and pain anaesthetic treatment as options based on his suspicion that Lemoine was suffering from a peripheral neuropathic process. Unable to find a surgically treatable problem, he released Lemoine from his care as unfit for duty. Dr. Jack Hurst, a neurosurgeon chosen by Manpower, was also unsuccessful in detecting the cause of Lemoine's pain. Believing that physiatric and paint anaesthetic treatment would be useless at this late date, Dr. Hurst recommended Lemoine keep his weight down and begin an active regimen of self-directed physical therapy. He found Lemoine capable of working.
Dr. Warren Williams, a neurosurgeon, performed an independent medical examination on Lemoine. Finding that he was not in need of physiatric or pain anesthetic treatment, Dr. Williams stated that Lemoine should be capable of performing light duty activities without difficulty.
A second hearing was held on July 17, 1998, before workers' compensation judge Patricia E. Koch. The issues at the hearing were Lemoine's entitlement to continuing SEB and the categorization of Manpower's credit as either a week for week or a dollar for dollar for past TTD paid against future SEB owed to Lemoine.
After taking the matter under advisement, the workers' compensation judge issued written reasons for judgment finding Lemoine entitled to continuing SEB at the full TTD disability rate and granting Manpower a week for week credit. The workers' compensation judge found that potential positions were provided to Lemoine, but that he was not hired either because the positions were unavailable or were beyond his physical limitations. Although the workers' compensation judge held that Lemoine did not put forth a good faith effort in searching for employment, she continued his SEB. A judgment was rendered in this matter on August 9, 1998. This appeal by Manpower followed.

ISSUES
Manpower raises three assignments of error on appeal. Initially, it claims that the workers' compensation judge erred in finding that Lemoine proved his entitlement to SEB and that it failed to establish his wage earning capacity sufficiently to reduce those benefits. It next claims that the workers' compensation judge erred by not terminating Lemoine's benefits after finding that he failed to make a good faith effort in searching for employment, as required by the prior interim order. Finally, Manpower argues that the workers' compensation judge erred in awarding it a week for week credit instead of a dollar for dollar credit.

*157 GOOD FAITH EFFORT
Manpower argues that the workers' compensation judge erred by not terminating Lemoine's benefits after specifically finding that he did not make a good faith effort in searching for employment as required by the interim order of December 18, 1996.
With regard to Lemoine's efforts to secure employment, the workers' compensation judge stated:
The Court sees that Mr. Lemoine is an individual who has learned how to not get hired by potential employers. His efforts in securing employment have been half-hearted and not with any zeal. His testimony does however reflect that he did attempt to apply or visit with each employer identified by the voc-rehab counselor. He has not shown that he is unable to work. What he has shown is that he knows how not to secure employment.
Mr. Lemoine has been quick to point out his lack of ability and has failed to point out his skills, which are varied, exceptional and certainly desired by employers. His knowledge as a business owner in two separate businesses is a skill and talent which is diversified and required in many employment situations. His expertise in the electrical field is valued by many but possessed by so few. His wealth of talent is smothered by his inability to re-assess his path towards employment.
Mr. Lemoine has accurately followed the expectations of the law and the jurisprudence in his attempts to find employment. Because of the attempts, he has shown that thus far his unable to secure employment, and not that he is unemployable. There are jobs that are "realistically obtainable" and some of those job descriptions have been identified by the voc-rehab counselor. What fails is that the positions identified have not been suitable for Mr. Lemoine in that they were either not available upon his application, or that after Mr. Lemoine got further details of the job description, it was beyond his physical limitations.
The Court finds that Mr. Lemoine shall continue on Supplemental Earnings Benefits at the full TTD rate and that vocational rehabilitation efforts will continue. Mr. Lemoine's obligation to put forth a good faith effort to seek out employment is increasing. The Court's goal for Mr. Lemoine is for him to fairly evaluate his talents and his physical limitations and then sell himself to potential employers. Workers' compensation benefits are not meant to be a livelihood but are designed to provide for a period of transition. That transition should have already taken place with a true good faith effort on the part of the [sic] Mr. Lemoine.
On the one hand, the workers' compensation judge found that Lemoine failed to make a good faith effort. On the other hand, she held that he complied with the law and jurisprudence in his efforts to gain employment. Although we are somewhat confused by these contradictory findings, the workers' compensation judge evidently felt that Lemoine put forth enough effort to comply with the law and entitle him to continuing benefits. We would further point out that Manpower was ordered to put forth a good faith effort in providing Lemoine vocational rehabilitation services, including assisting him with interview skills. There is no evidence in the record showing that it did anything other than prepare labor market surveys and assist him in preparing a resume. Suffice it to say, we feel constrained to find no error in her decision, especially in view of the liberal coverage afforded the employee under the Workers' Compensation Act. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989). This assignment of error is dismissed as being without merit.

SUPPLEMENTAL EARNINGS BENEFITS
Manpower next argues that the workers' compensation judge erred, first in finding *158 that Lemoine proved his entitlement to SEB, and then by finding that it failed to establish his wage earning capacity through the positions identified in the labor market surveys prepared by Favaloro. These positions, it claims, should have reduced the amount of SEB received by Lemoine.
An employee is entitled to SEB once he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551. The employee bears the burden of proving his inability to earn that amount by a preponderance of the evidence. Id. This analysis is "necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that the workers' compensation law is to be construed liberally in favor of finding coverage." Daigle, 545 So.2d at 1007. Once the employee proves his inability to earn ninety percent of his pre-injury wages, the burden shifts to the employer, either to defeat the employee's claim or establish his wage earning capacity. Id. The employer does so by proving that the employee is physically capable of performing a specific job, which was offered to him or was available to him in his or the employer's community or reasonable geographic region. Id. Job availability is proven by establishing:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
(2) the amount of wage that an employee with claimants experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
Banks, 696 So.2d at 557. Actual job placement is not required. Id.

Lemoine's Burden of Proof:
Lemoine presented evidence showing that he is no longer capable of performing his prior duties as an electrician, which is categorized as being heavy to very heavy work. All of the examining doctors, except Dr. Hurst, agreed that Lemoine could no longer perform within that work classification. Dr. Hurst failed to assign a work category commiserate with Lemoine's physical restrictions, only stating that he was not disabled from working. Although the functional capacity evaluation determined that Lemoine was capable of performing at a medium to heavy work capacity, both Drs. Shepherd and Bertuccini disagreed with that finding.
Lemoine testified that he has not worked since injuring his back and that he unsuccessfully sought employment through the labor market surveys conducted by Favaloro and through efforts taken on his own initiative. At the second hearing, he listed twenty-one employers contacted by him and stated that some of the employers were not hiring or would only accepted his application. He also determined upon further inquiry that some of the positions identified by Favaloro were outside of his physical capabilities or that he lacked the skills necessary to perform the duties required. Lemoine further testified that it would be difficult for him to drive from his home in Marksville to Alexandria every day, where the majority of the positions identified by Favaloro were located. At the first hearing, the workers' compensation judge held that the forty-five minute drive was not unreasonable, but would probably cause Lemoine pain.
Following the second hearing, the workers' compensation judge held that Lemoine complied with the law and the jurisprudence in attempting to find employment and that the evidence was sufficient to prove that he was unable to secure employment. Accordingly, she continued Lemoine's SEB, at the full TTD rate, and ordered Manpower to continue its vocational rehabilitation services. Considering *159 the foregoing evidence, we cannot say that the workers' compensation judge erred in finding that Lemoine proved by a preponderance of the evidence that he is unable to earn ninety percent or more of his preinjury wages.
Pursuant to Banks, 696 So.2d 551, the burden then shifted to Manpower to prove that Lemoine was physically capable of performing a specific job, which was either offered to him or was available to him in his or its community or reasonable geographic region.

Manpower's Burden of Proof:
The workers' compensation judge identified eleven positions located by the Favaloro which fit Lemoine's physical restrictions and were located within his community or reasonable geographic region. These were clerk positions at Bayou Video, Auto Zone, and the Department of Motor Vehicles; sales positions at Sears, Southern Chevrolet, Marksville Ford, Ryland Ford, and Service Electrical Supply; a customer service representative position with TCA Cable; a car door unlocker with Pop-A-Lock; and an unarmed security position at Grand Casino Avoyelles. The workers' compensation judge stated that Lemoine applied at all or most of the positions identified, but was not hired either because the position was unavailable at the time or was unsuitable upon further inquiry.
After reviewing the positions identified, we find no error in the workers' compensation judge's finding that Manpower failed to prove a position was available to Lemoine which would establish his wage earning capacity. Two of the positions exceeded the ten pound weight limit imposed by Dr. Williams. Favaloro testified that two other positions were unavailable when Lemoine was notified about them, and Lemoine testified that two additional positions were unavailable when he applied for them. Four auto sales positions, three identified by the workers' compensation judge and an additional one identified in the record, paid salaries based on commission, thus, the potential wages Lemoine was capable of earning in those positions was speculative. Lemoine further testified that he lacked the requisite computer skills necessary to perform the customer service representative position with TCA Cable, and that the position with the Department of Motor Vehicles was located more than forty miles from his home and would require him to get in and out of vehicles. Dr. Williams and Dr. Bertuccini both stated that they would restrict Lemoine from bending, and the functional capacity evaluation states that he has a low endurance for forward bending. Additionally, Favaloro testified that Lemoine would have to pass the civil service test before he would be eligible for this position.
The only remaining position is the clerk position with Bayou Video, however, this position was never approved by any of the physicians. Additionally, although Favaloro testified the position was available when she informed Lemoine about it and the Auto Zone position in her February 18, 1997 letter, it states that he should apply as soon as possible because "these employers currently have openings or are anticipating openings." Thus, the evidence is unclear as to whether the Bayou Video position was available when Lemoine was notified of its existence. Since the workers' compensation judge evidently considered this position when reaching her decision, we cannot say that she erred in finding that it failed to satisfy the requirements of Banks. Accordingly, Manpower's assignment of error is dismissed for being without merit. The judgment of the workers' compensation judge awarding Lemoine SEB at the TTD rate is affirmed.

LA.R.S. 23:1223(B) CREDIT
Finally, Manpower argues that the workers' compensation judge erred in allowing it a week for week credit rather than a dollar for dollar credit of its past TTD paid against its future SEB obligation. Manpower paid Lemoine TTD of *160 $318.00 per week for 101.8 weeks, thus, it claims that it is entitled to a credit of $32,372.40 against any future SEB it owes Lemoine.
The workers' compensation judge held that Lemoine was entitled to a week for week credit based on this court's holding in Texaco, Inc. v. Foreman, 96-1434 (La. App. 3 Cir. 4/2/97); 692 So.2d 684, writ denied, 97-1617 (La.10/3/97); 701 So.2d 206. In that case, the workers' compensation judge awarded the plaintiff 520 weeks of supplemental earnings benefits although he had already received 372 weeks of temporary total disability benefits. This court reversed the judgment of the workers' compensation judge on that issue, finding that the plaintiff was only entitled to 148 weeks of the 520 weeks of supplemental earnings benefits available, thus, allowing him a week for week credit.
At the time of Lemoine's injury, La.R.S. 23:1223(B) provided, "Except as provided in R.S. 23:1221(4)(s), when compensation has been paid under R.S. 23:1221(1), (2), or (4), the amount of such payment shall be deducted from any compensation allowed under R.S. 23:1221(3) or Subpart C of this Part." However, this statute was amended by Acts 1999, No. 126, effective August 15, 1999. The amended statute provides, "Except as provided in R.S. 23:1221(4)(s), when compensation has been paid under R.S. 23:1221(1), (2), or (4), the number of weeks of compensation paid shall be deducted from the number of weeks of compensation allowed under R.S. 23:1221(3) or Subpart C of this Part." (Emphasis added).
Although the legislature failed to express whether the 1999 amendment should be applied retroactively or prospectively, we find that it is interpretive in nature in that it clarifies or explains and is intended to establish the meaning that La.R.S. 23:1223(B) had from the time of its enactment. Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97); 705 So.2d 724; Mitchell v. Dixie Roofing & Sheet Metal Co., Inc., 95-288 (La.App. 3 Cir. 10/4/95); 663 So.2d 222. Accordingly, we affirm the workers' compensation judge's award of a week for week credit.

CONCLUSION
For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. The costs of this appeal are assessed to the plaintiff-appellant, Manpower Temporary Services.
AFFIRMED.