844 So.2d 900 (2003)
CITY OF EUNICE
v.
Earlyn CARRIER.
No. 02-1132.
Court of Appeal of Louisiana, Third Circuit.
February 19, 2003.
Writ Denied May 9, 2003.
*901 Christopher R. Philipp, Attorney at Law, Lafayette, LA, for Plaintiff/Appellee, City of Eunice.
Michael W. Robinson, Attorney at Law, Eunice, LA, for Defendant/Appellant, Earlyn Carrier.
Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD and ELIZABETH A. PICKETT, Judges.
PICKETT, Judge.

FACTS
Mr. Carrier began working for the City of Eunice (City) on May 25, 1995. Before beginning that employment, he completed the City's medical history form in which he was asked to "list all injuries you have had (either on or off the job)." He answered "thoracic outlet." In March of 1996, nearly one year after beginning his employment, he ruptured a disc in his neck while moving a large corrugated pipe. The City paid for cervical surgery and indemnity benefits until he returned to work, this time as a street sweeper. He performed his assigned duties, but suffered frequent pain and had difficulty doing his job as he had not fully recovered. On November 17, 1997, while moving big chunks of concrete, he aggravated his neck condition to the point that he became totally disabled *902 again. As a result of this aggravation of his injury, Carrier stopped working for the City on December 12, 1997. Carrier received supplemental earnings benefits from the City.
On May 24, 1999, the City offered Mr. Carrier his previous job as a street sweeper with modifications. The job offered was for four hours per day, five days a week, and paid the same rate Mr. Carrier earned prior to the accident. Mr. Carrier appeared for the job, but left after a period of two to three hours.
The City of Eunice sought to terminate Mr. Carrier's workers' compensation benefits on the ground that he could return to work earning ninety percent of his previous wages and alleging fraud pursuant to La.R.S. 23:1208.1. The workers' compensation judge ruled that Carrier forfeited his benefits pursuant to La.R.S. 23:1208.1 for his failure to list a previous injury on his pre-employment medical history questionnaire. We reversed, finding that "The City is required to prove all three elements, which La.R.S. 23:1208.1 requires, but has failed to prove even one. Thus, forfeiture is inappropriate." City of Eunice v. Carrier, 01-1184, p. 9 (La.App. 3 Cir. 2/20/02); 821 So.2d 3. Mr. Carrier filed for rehearing, limiting the issue to whether this court's ruling also addressed and included the reversal of the trial court's holding that he had not carried his burden of proving that he was entitled to supplemental earnings benefits (SEBs). This court remanded, directing the workers' compensation judge to address the issue of whether Mr. Carrier was entitled to SEBs. The matter was heard on June 24, 2002. At that time the City was paying Mr. Carrier SEBs. On remand, the workers' compensation judge ruled that Mr. Carrier was not entitled to SEBs and denied his claim for indemnity benefits, finding he had not made a good faith effort to attempt to return to work. It is from this ruling the claimant appeals.

ASSIGNMENTS OF ERROR
The appellant has urged the following assignments of error:
1) The Hearing Officer erred in finding that Mr. Carrier could return to gainful employment earning ninety per cent or more of his average weekly wage.
2) The Hearing Officer erred in not considering all of the medical evidence, and in not considering Mr. Carrier's entire condition from the viewpoints of all of the medical specialists.
3) The Hearing Officer erred in not considering all of the evidence, both expert and lay testimony, in deciding Mr. Carrier's fate.

DISCUSSION
This matter was submitted to the workers' compensation judge by record on May 29, 2001, when it was heard following the remand from this court. The workers' compensation judge ruled on this matter on June 24, 2002, stating his reasons for ruling orally for the record. The workers' compensation judge noted:
"From the testimony of Mr. Carrier and from the medical records that were submitted into evidence and the exhibits and testimony of Louis Hebert, who is a vocational rehabilitation counselor, it is patently obvious that Mr. Carrier is unable to return to the position that he held before his accident of November 17, 1997. And because of his accident and the resulted injuries and, also, because of his educational background and his transferable job skills, there is a very small market for him due to the fact that he lives in a small town."
The workers' compensation judge went on to note that Mr. Carrier was offered a *903 job as a street sweeper, with modifications, on June 1, 2000. The judge noted Dr. Lopez had approved the position. Mr. Carrier appeared for work. He testified he attempted to work for a period of two to three hours and left because he felt he was incapable of performing the job. The workers' compensation judge ultimately determined this was not a good faith attempt to return to work at a position authorized by his treating physician. Because the judge found the position was open to him, offered to him, and would have paid him at the same rate of pay he was earning before his accident, the judge determined no SEBs are owed to Mr. Carrier by the City.
All three assignments of error pertain to whether the workers' compensation judge was manifestly erroneous in his conclusions regarding Mr. Carrier's ability to return to work. Accordingly, they will be addressed together.
An appellate court may not set aside the factual findings of a workers' compensation judge in the absence of manifest error or unless it is clearly wrong. Wackenhut Corrections Corp. v. Bradley, 96-796 (La. App. 3 Cir. 12/26/96); 685 So.2d 661. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880 at 882 (La.1993).
An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La.R.S. 23:1221(3)(a). "Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case." Freeman v. Poulan/Weed Eater, 93-1530 p. 7 (La.1/14/94); 630 So.2d 733, 739.
Once the employee's burden is met, the burden shifts to the employer. In order to defeat the employee's claim for SEBs or establish the employee's earning capacity, the employer must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job. In addition, the employer must prove that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La.R.S. 23:1221(3)(c)(i); Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989). Actual job placement is not required. Romero v. Grey Wolf Drilling Co., 594 So.2d 1008 (La.App. 3 Cir.1992).
An employer may discharge its burden of proving job availability by establishing, at a minimum, the following: 1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region; 2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and 3) an actual position available for that particular job at the time that the claimant received notification of the job's existence. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551. A "suitable job" is a job that the claimant is not only physically capable of performing, but one that also falls within the limits of the claimant's age, experience, and education. Id.
*904 After reviewing the record in the instant matter, we cannot agree with the workers' compensation judge that the employer discharged its duty of proving job availability.
The City contends that the evidence proves that there was a modified job available to Mr. Carrier on June 1, 1999, which his treating physician, Dr. Lopez had approved. This job was as a street sweeper, his previous position, which had been modified for Mr. Carrier's benefit. A review of the record reflects that Dr. Lopez never actually approved that position.
The record reflects that a job description was sent to Dr. Lopez for a street sweeper operator by the City which contained modifications that related to heavy lifting. Dr. Lopez made the following notation on the form: "Will approve as a part time (4 hour/day) trial at work, with increments of 2 hour/day after 2 weeks of successfully tolerating the job." He notes, "I still do not understand all the details of the job." (emphasis ours). This job description, signed by Dr. Lopez on May 14, 1999, cannot be considered an approval of the job as described with modifications. It is obvious on the face of the document that Dr. Lopez did not understand all the job entailed. Dr. Lopez's deposition was taken on May 9, 2000, nearly one year later. In his sworn testimony Dr. Lopez indicated that he believed Mr. Carrier to be truthful in his complaints, with a whole body impairment of 25%. In response to specific questions regarding Mr. Carrier's ability to return to work he stated:
Q: In terms of disability, taking into account these past three years and all that you've seen him try to do, and what he's reported to you, what is your opinion, as to whether he can return to work now, you know? I know you signed a few things, and looked at"let's try this, let's try this." What do you think now, today, as to whether he's employable or not?
A: Well, considering a level of employmentI mean, level of education, work history, and the condition that he has, plus the fact that he's been truly out of work for better than three years, the opportunity of getting this man to work is as close to zero as it can get; and his capacity forto engage in competitive employment, the same, almost nothing.
Q: In other words, he might be able to return to work, but not on a sustained basis; is that fair to say? He couldn't keep the job, because of his pain and his depression?
A: Well, this man has pain that he will want to change position, change tochange where he is. He will move and stretch, and do this, and do that. He comes to theto my evaluation, and in a 15 minute period, he stands, he sits, he twists around. So he's barely paying attention to my conversation and my examination of him, and that's in a short period of time, where he is captive audience. So extending that to a work situation, I don't think that he would perform at all.
Q: Okay. And I'm speaking now is the prognosis basically the same? Is it
A: Very poor, about as poor as can be.
Dr. Lopez further stated an individual taking the type medications Mr. Carrier is taking cannot safely operate a motor vehicle.
Mr. Carrier was also seen by Dr. J. Frazer Gaar, an orthopaedic surgeon. Dr. Gaar had also been provided with a modified job description from the City. He was of the opinion that Mr. Carrier could not perform this type of work because it would *905 require him to turn his head from side to side. June 24, 1999, he returned the form to the City stating he did not approve this job description as a job Mr. Carrier could perform. In his deposition he stated as follows regarding Mr. Carrier's ability to work while taking the medications he presently is required to take:
Q: And along those lines, as long as he is on that type of medication, could he perform the jobs reviewed or for that matter, even a sedentary or
A: I'm not sure he could do any of that as long as he's on narcotics.
Q: Okay, Mostly likely he could not; is that
A: I would not hire him personally, put it that way.
Q: Not just for the job you reviewed but basically even for a sedentary job or a light-duty job?
A: Well, anything where he's got to drive or he's got tohe certainly can't be around any type of moving machinery, things like that.
Mr. Carrier was also seen by Dr. G. Gregory Gidman who performed an Independent Medical Examination (IME). In his IME report Dr. Gidman noted it was his opinion that Mr. Carrier could perform light duty work. He further noted, however, as follows:
I do not feel that it would be safe for him to drive vehicles, even though he is driving his personal car. I do not feel that he should be assigned to any type of vehicle at work. He should have maximum lifting of 20 pounds. He should not be on any activity requiring repetitive head motion or holding his head in a fixed position for long periods of time.
When Dr. Gidman's deposition was taken on September 14, 1999, he maintained his position that Mr. Carrier should not drive because of the limitation of movement in his neck.

DECREE
After reviewing the totality of the evidence, we find the workers' compensation judge committed manifest error by concluding that Mr. Carrier failed to make a good faith effort to return to work at an approved job, thereby terminating his entitlement]) to SEBs. We do not find that Mr. Carrier has been offered a position by the City that could be considered a "suitable job," one that Mr. Carrier is physically capable of performing. The City has failed to carry its burden of proving by a preponderance of the evidence that Mr. Carrier is capable of performing the job offered. In fact, the evidence established quiet the opposite. Accordingly, we reverse the ruling of the trial court and reinstate Mr. Carrier's SEBs. Costs of this appeal are to be borne by the City of Eunice.
REVERSED AND RENDERED.