# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


## 09-643


**EDWARD MONTGOMERY**

**VERSUS**

**LAFAYETTE PARISH SCHOOL BOARD**

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 04
PARISH OF LAFAYETTE, NO. 06-05862
HONORABLE SHARON MORROW, PRESIDING
**********


**SYLVIA R. COOKS**
**JUDGE**


**********


Court composed of Ulysses G. Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.


**AFFIRMED, AS AMENDED.**

Janice H. Barber
Janice H. Barber Law Corporation
P.O. Box 1909
Sulphur, LA 70664-1909
(337) 625-4443
COUNSEL FOR PLAINTIFF/APPELLEE:
　　　Edward Montgomery

L. Lane Roy
Preis & Roy
P.O. Drawer 94-C
Lafayette, LA 70509
(337) 237-6062
COUNSEL FOR DEFENDANT-APPELLANT:
　　　Lafayette Parish School Board

**COOKS, Judge.**

This appeal involves a workers' compensation dispute over the employer's alleged improper termination of supplemental earnings benefits. For the following reasons, we affirm and award the claimant additional attorney fees for work done of appeal.

**FACTS AND PROCEDURAL HISTORY**

On October 27, 2000, Edward Montgomery, while in the course and scope of his employment with the Lafayette Parish School Board as a teaching assistant, was injured while attempting to break up a fight. Immediately following the accident, Mr. Montgomery sought medical treatment and eventually began treating with Dr. John Cobb, an orthopaedic surgeon, in April of 2001. Dr. Cobb was advised that Montgomery had previously injured his neck in 1989, and a surgical procedure had been performed at the C3-4 level by Dr. Jack Hurst.

Dr. Cobb determined Montgomery suffered from a central disc herniation at the C4-5 level and recommended conservative treatment. When the conservative treatment did not help, Dr. Cobb recommended an anterior cervical discectomy and fusion at the C4-5 level. After reviewing the medical records, the employer's orthopaedic surgeon, Dr. John Schutte, concurred in the necessity of surgery. In November, 2001, surgery was performed.

Dr. Cobb continued treating Montgomery, and felt the surgery was successful and healing well. Montgomery complained of continued right-sided myofascial pain, which Dr. Cobb related to a moderate degree of stenosis at the C5-6 level. Dr. Cobb recommended a nerve block, which was performed.

In March of 2004, Montgomery was again seen by Dr. Cobb complaining of frequent pain in his neck with radiating pain in both shoulders and arms. He also

complained of pain and swelling in his right heel. Dr. Cobb recommended an anterior cervical discectomy and fusion at the C5-6 level. Dr. Schutte did not believe these complaints were related to the work injury and did not agree with Dr. Cobb's surgical recommendation. Dr. Schutte felt Montgomery had some stenosis at the C5-6 level from bone spurs that pre-existed the 2000 school accident.

Because of the dispute, Dr. Thad Broussard was ordered by the workers' compensation court to perform an independent medical examination concerning the necessity of the surgery. Dr. Broussard concluded surgery would be unlikely to improve Montgomery's situation. He based his conclusion on the unsatisfactory results from the previous surgery and a lack of radicular findings. He also believed Montgomery was able to return to work. He recommended a Functional Capacity Evaluation (FCE) to determine what type of work Montgomery could perform.

The FCE was conducted on January 4, 2005, which indicated that Montgomery was capable of medium duty work with certain restrictions, a 40 pound limit on knuckle to shoulder lifts, a 30 pound limit on one-handed carries, and no crouching. The FCE therapist concluded Montgomery was incapable of performing his previous job duties with the School Board.

Dr. Cobb treated Montgomery for the last time on January 19, 2005, noting his complaints were compatible with spinal stenosis, and referring Montgomery to Dr. Joseph Gillespie for pain management. Dr. Cobb deferred rendering an opinion on Montgomery's work status to Dr. Gillespie.

Karen Herron was selected by the School Board as Montgomery's vocational rehabilitation counselor. She met with Montgomery and discussed his background, education, and work history. In an August 11, 2005 report, which counsel for Montgomery denied receiving, Herron stated there were numerous factors supporting

a return to work for Montgomery, including his relative youth and good work history. She noted that Montgomery did not have transportation and also had a lack of computer knowledge, which were detriments relative to his return to employment. Herron worked with Montgomery to compose a resume and she advised him to attend a job fair, which he did.

Herron identified several jobs which were sent to Dr. Gillespie for approval. Dr. Gillespie disagreed that Montgomery was capable of medium duty work and limited him to light duty work. On October 3, 2005, Dr. Gillespie gave his approval for two security guard jobs. Relying on this, the School Board terminated Montgomery's supplemental earnings benefits (SEB) the following day, on October 4, 2005. On November 1, 2005, Dr. Gillespie also gave his approval for a work release driver position.

Montgomery filed a disputed claim for compensation alleging his SEB payments were improperly terminated. He also requested penalties and attorney fees for the improper termination of SEB. After a trial on the matter, the workers' compensation judge (WCJ) rendered judgment in favor of Montgomery, concluding the School Board wrongfully terminated SEB, finding the jobs relied upon by the employer were not fully within the physical restrictions placed on Montgomery and, therefore, were not suitable jobs. Benefits were ordered to be reinstated to the date of termination. A penalty of $2,000.00 and attorney fees of $6,500.00 were awarded for the improper termination of benefits. The WCJ gave the following written reasons for her judgment:

> There are 3 jobs that Ms. Herron located that were approved by Dr. Gillespie and that she verified as still available once approved by the doctor. Those were two light duty security guard positions, approved by Dr. Gillespie on October 3, 2005, and a Work Release Driver position, approved by Dr. Gillespie on November 1, 2005.

The evidence reflected that Dr. Cobb had placed limitations on Montgomery's driving. Ms. Herron also acknowledged that altercations were possible with either the security guard or jail driver transport positions. Montgomery was injured because of an altercation in his position as a teaching assistant. Ms. Herron testified that the possibility of altercations was one reason the School Board would not re-hire Montgomery.

While the School Board superficially met the requirements of *Banks*, it seems hypocritical to terminate benefits on security guard jobs, where it is more foreseeable that altercations may occur, when it would not re-hire Montgomery because of the possibility of altercations.

Due to the possibility of altercations, the Workers' Compensation Judge finds that the jobs relied upon are not fully within the physical restrictions of Mr. Montgomery and are not suitable jobs.

The School Board appeals the WCJ's judgment, asserting it was error for the WCJ to negate jobs approved by the treating physician. Thus, it argues its termination of SEB was not improper.

### ANALYSIS

In workers' compensation cases, the appropriate standard of review to be applied by the appellate court to the WCJ's findings of fact is the manifest error/clearly wrong standard. *Dean v. Southmark Construction*, 03-1051 (La. 07/06/04), 879 So.2d 112; *Alexander v. Pellerin Marble & Granite*, 93-1698 (La. 01/14/94), 630 So.2d 706. In applying this standard, the court must determine not whether the trier of fact was wrong, but whether the factfinder's conclusion was a reasonable one. *Howard v. Holyfield Construction, Inc.*, 38,728 (La.App.2 Cir. 07/14/04), 878 So.2d 875. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Dean*, supra; *Longoria v. Brookshire Grocery Co.*, 37,975 (La.App.2 Cir. 12/19/03), 862 So.2d 1172, *writ denied*, 04-157 (La. 4/23/04), 870 So.2d 299.

The parties acknowledged that Montgomery was receiving SEB and that the applicable statute regarding his entitlement to these benefits is La.R.S. 23:1221(3).

-4-

As noted by our supreme court in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 07/01/97), 696 So.2d 551, 556, *quoting Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52 (La.1993), "the purpose of SEB is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident."

With the School Board terminating Montgomery's SEB, the issue is whether the WCJ erred in finding the School Board failed to prove the availability of a job that satisfies the criteria set forth in La.R.S. 23:1221(3)(c)(i). In *Banks*, 696 So.2d at 557, the supreme court held an employer may discharge its burden of proving job availability by establishing, at a minimum, the following:

(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;

(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and

(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.

The *Banks* court further held that a "suitable job" was a position that claimant was not only physically capable of performing, but one that also fell within the limits of claimant's age, experience, and education, unless the employer or potential employer was willing to provide any additional necessary training or education. *Id.*; *see also Lacaze v. Alliance Compressors*, 03-1566 (La.App. 3 Cir. 04/14/04), 870 So.2d 1150; *City of Eunice v. Carrier*, 02-1132 (La.App. 3 Cir. 02/19/03), 844 So.2d 900, *writ denied*, 03-813 (La. 05/09/03), 843 So.2d 409. The courts have clearly provided that this analysis is "necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that the workers' compensation law is to be construed liberally in favor of finding coverage." *Daigle v. Sherwin-Williams Co.*,

545 So.2d 1005, 1007 (La.1989); see also *Banks,* 696 So.2d 551 and *Manpower Temp. Servs. v. Lemoine,* 99-636 (La.App. 3 Cir. 10/20/99), 747 So.2d 153.

The School Board argues the law imposes no burden on proving an available job has "no possibility of altercations," absent a physician or FCE recommendation for such and, therefore, the judgment should be reversed. Essentially, the School Board contends the determination of the suitability and availability of a job is purely a medical determination, and once it is approved by a physician, that inquiry closes. We disagree.

The court in *Banks* stated it is up to the court to determine which jobs are suitable and available to a claimant for purposes of SEB. As Montgomery notes, the *Banks* court listed the criteria set forth "as a minimum," implying that courts can consider other factors in determining whether termination of SEB was appropriate. This court in *Manpower*, 747 So.2d 153, affirmed a WCJ's decision to reject eleven jobs provided by the vocational rehabilitation counselor which were deemed within the claimant's physical restrictions and geographical area. We found the WCJ did not commit manifest error in holding that none of the jobs, *even those approved by the physician*, were truly "suitable" or "available" to the claimant. Thus, this court has determined that it is within the province of the WCJ to negate jobs that are physician approved if the record supports a finding that the jobs are not truly "suitable" or "available" for the claimant.

The WCJ reviewed the medical records, restrictions and testimony and reports of Ms. Herron, the vocational rehabilitation counselor. The WCJ noted, while the general nature of the security guard positions were arguably within the physical limitations set forth by all the doctors, the nature of the job exposed the claimant to a reasonable possibility of physical altercations, which even the School Board itself

realized was beyond his physical abilities. Ms. Herron testified it was her understanding that one of the criteria for the School Board's decision that Montgomery could not return to his previous position was the possibility of altercations. Ms. Herron testified a security guard position could have a distinct possibility of altercations. She could not determine if either of the two security guard positions were particularly at risk for altercations, as her testimony indicates she never contacted either of the prospective employers of the security job positions to verify job availability, or to determine job specifics.

Ms. Herron also acknowledged the two security guard positions required completion of a State mandated training course; however, she was unaware if the training course required any physical component that Mr. Montgomery was unable to complete. Considering all the physicians placed some physical restrictions on Montgomery, it was unreasonable for Ms. Herron not to investigate further to determine exactly what physical requirements the mandated training course required.

Ms. Herron also noted both security guard positions appeared to require at least some shifts at night. She testified she did not discuss with Mr. Montgomery how he could get to any night shifts without any available transportation. She acknowledged he would likely use public transportation to go to and from work, and that would present problems if he worked at night.

After a through review of the record, we cannot say the WCJ erred in finding the School Board did not establish the two security guard positions were "suitable" or "available" under the *Banks* standard. Accordingly, the School Board overstepped its rights by unilaterally terminating Mr. Montgomery's SEB.

We also find any discussion of the work release driver position was not germane to the issue of whether the School Board improperly terminated benefits on

October 4, 2005. Implicit in the "availability" requirement of *Banks* is physician approval. *See East-Garrett v. Greyhound Bus Lines*, 99-421 (La.App. 3 Cir. 11/3/99), 746 So.2d 715. Thus, since the physician did not approve the Work Release Driver job prior to termination of Montgomery's SEB, this job could not be deemed "available" to Montgomery at the time the decision was made to terminate SEB. Thus, this job cannot be considered when discussing whether the School Board's decision to terminate benefits on October 4, 2005 fulfilled the *Banks* criteria.[1] *See Chelette v. Riverwood International USA, Inc.*, 02-1347 (La.App. 3 Cir. 4/30/03), 843 So.2d 1245, *rev'd in part on other grounds,* 03-1483 (La.10/17/03), 858 So.2d 412.

Mr. Montgomery answered the School Board's appeal and requested we award him additional attorney fees for work performed by his attorney on appeal. As he has successfully defended the School Board's appeal, we award additional attorney fees in the amount of $3,500.00.

## DECREE

For the above reasons, the judgment of the Office of Workers' Compensation is affirmed. An additional $3,500.00 in attorney fees is awarded to Mr. Montgomery for the work necessitated by this appeal. All costs are assessed to the Lafayette Parish School Board.

**AFFIRMED, AS AMENDED.**

---

[1] We also note, concerning the work release driver position, Dr. Cobb previously restricted Mr. Montgomery's driving. In *Manpower*, 747 So.2d 153, the court held two jobs, which were physician approved, were not suitable because the job duties exceeded previous lifting restrictions issued by one of the claimant's physicians. The same situation applies here. The Work Release Driver position, which primarily requires driving, is in violation of Dr. Cobb's driving restrictions.