# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 20-193


**ROBERT LANDRY**

**VERSUS**

**LOFTON SECURITY SERVICE, INC., ET AL.**



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF ST. LANDRY, NO. 18-02744
ANTHONY PAUL PALERMO, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Phyllis M. Keaty, and D. Kent Savoie, Judges.


**REVERSED AND RENDERED.**

**Alex S. Lyons**
**400 Travis St., Ste. 1309**
**Shreveport, LA 71101**
**(318) 674-9711**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Robert Landry**

**Eric J. Waltner**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1400**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Zurich American Insurance Company**
    **Lofton Security Services, Inc.**

**EZELL, Judge.**

Robert Landry appeals a judgment from the Office of Workers' Compensation denying his claim for supplemental earnings benefits (SEB) due to a shoulder injury he received while working for Lofton Security Services, Inc. He claims that he is not able to return to his previous position as an unarmed security guard and there is no work available to him within his reasonable geographic region. He also claims he is entitled to penalties and attorney fees for the arbitrary and capricious termination of his benefits.

## FACTS

Mr. Landry was employed as an unarmed security guard by Lofton. He was working at Opelousas General Hospital South Campus when he was involved in an altercation with a psychiatric patient on October 4, 2017. The patient was threatening to kill hospital staff and another patient. Mr. Landry explained that the patient came out of his room and aggressively approached the nurses' station, so Mr. Landry asked him to go back to his room. To accomplish this, Mr. Landry stood in front of the patient and walked him back to his room. Mr. Landry then called the police.

Mr. Landry then stood at the nurses' station facing the patient's room. The patient then began making threats that he was going to get guns and rifles and kill people at the hospital, starting with the person in the room next to his room. The patient came out of his room and approached the room next door when Mr. Landry stood in front of him and asked him to go back to his room. Mr. Landry then used his body to make the patient go back to his room. The patient struggled with Mr. Landry. Mr. Landry started pushing the patient back into his room using his body.

The next day Mr. Landry noticed pain in his left shoulder and arm, which he reported to his supervisor and commanding officer. Mr. Landry was diagnosed with a torn rotator cuff which eventually required surgery.

Mr. Landry filed a disputed claim for compensation on April 25, 2018, against Lofton and its workers' compensation insurer, Zurich American Insurance Company. A trial was held on August 28, 2019. Judgment was rendered on November 21, 2019, dismissing all of Mr. Landry's claims for medical and indemnity benefits. Mr. Landry then filed the present appeal.

## SUPPLEMENTAL EARNINGS BENEFITS

Mr. Landry argues that the workers' compensation judge (WCJ) erred in failing to award him SEB based upon the disability caused by the rotator cuff injury to his left shoulder.[1] Mr. Landry claims that the evidence established he is unable to return to his previous position as an unarmed security guard and that there is no work available to him within his reasonable geographic region.

Prior to trial, the parties stipulated that Mr. Landry sustained an accident as defined by the Louisiana Workers' Compensation Act. The WCJ issued an oral ruling on October 29, 2019, and ruled as follows regarding Mr. Henry's shoulder injury:

> The Court also does not find evidence to prove that further treatment was needed for the shoulder. The Court also notes that Mr. Landry himself testified that he was currently not in any pain at the time of the trial, and that if a job was offered to him, that he would accept the job. The Court therefore finds the claimant is not disabled because he cannot prove that he is unable to earn ninety percent of his pre-injury wages. The Court therefore does not grant benefits to the claimant.

---

[1] Mr. Landry also claimed that the incident caused a cervical injury and aggravated pre-existing carpal tunnel syndrome in his left hand. He abandoned the cervical injury claim prior to trial and is not contesting the WCJ's denial of his claim based on carpal tunnel syndrome.

The supreme court has explained the purpose and burden of proof regarding supplemental earnings benefits.

> The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. *Poissenot v. St. Bernard Parish Sheriff's Office*, 09–2793 (La.1/9/11), 56 So.3d 170, 174; *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52, 55 (La.1993). [Louisiana Revised Statutes] 23:1221(3)(a) provides that an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Poissenot*, 56 So.3d at 174; *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96–2840 (La.7/1/97), 696 So.2d 551, 556. Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); *Poissenot*, 56 So.3d at 174; *Banks*, 696 So.2d at 551.

*Clay v. Our Lady of Lourdes Reg. Med. Ctr., Inc.*, 11-1797, p. 4 (La. 5/8/12), 93 So.3d 536, 538-39.

The supreme court in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 10-11 (La. 7/1/97), 696 So.2d 551, 557 (emphasis added), discussed the meaning of "job availability":

> (1)    the existence of a **suitable job** within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;

> (2)    the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and

> (3)    an actual position available for that particular job at the time that the claimant received notification of the job's existence.

Dr. Barry Henry, an orthopedic surgeon, first saw Mr. Landry on November 1, 2017.  He reviewed an MRI that Mr. Landry had undergone of his left shoulder

3

after the accident which revealed a full-thickness supraspinatus tear with some AC joint arthrosis. There was also a partial tearing of the subscapularis and a long head biceps tear. Dr. Henry diagnosed him with a rotator cuff tear of the left shoulder and possibly a long head of the biceps tendon tear.

Mr. Landry began receiving physical therapy for his left shoulder issues. Mr. Landry's pain continued to increase even after conservative treatment, so he had surgery to repair the rotator cuff, in addition to repairs to the biceps tendon, on January 18, 2018. By March 21, 2018, there was vast improvement in the shoulder. As of April 27, 2018, his shoulder range of motion and strength had improved. Dr. Henry discharged Mr. Landry to work that day concerning his shoulder issues but restricted him to lifting no greater than twenty-five pounds and no overhead reaching more than one hour. Dr. Henry noted, however, that he did not consider releasing Mr. Landry back to work as a security guard because he may have to respond to someone who is acting out and another physical altercation could damage his left shoulder.

Dr. Thomas Butaud, an orthopedic surgeon, was asked to perform an independent medical examination of Mr. Landry. He examined Mr. Landry on December 17, 2018. Dr. Butaud agreed with Dr. Henry's diagnosis of a rotator cuff tear and biceps tendon tear. He testified that it would take about six months to recover from surgery. Dr. Butaud stated that he had no problem with Mr. Landry performing a job as a security officer who checked doors and things of that nature, but believed that there was an increased risk of injury if he would get into another altercation or have to take care of a combative patient. Dr. Butaud agreed the job would be appropriate if Mr. Landry did not have to engage in fights or restrain patients.

4

Marcie Holmes, a vocational rehabilitation counselor with Coventry Workers' Compensation Services, was hired to provide vocational rehabilitation services to Mr. Landry. She found Mr. Landry to be very cooperative. Mr. Landry explained to Ms. Holmes that part of his job duties with Lofton required him to transport patients around the hospital and that on occasion he may have to restrain patients. Ms. Holmes met with Angelle Hollier, who was employed by Lofton, about Mr. Landry's job duties. She confirmed that Mr. Landry would have to transport patients and that he might have to restrain patients if needed. She also stated that the position requires lifting fifty pounds occasionally, constant walking, standing, and occasional stair climbing.

Mr. Landry returned to work after the incident with a splint, and his restrictions were accommodated. After surgery, Ms. Hollier confirmed that the position would exceed the restrictions assigned by Dr. Henry, so Ms. Holmes ruled out Mr. Landry returning to work for Lofton. Ms. Holmes did ask Ms. Hollier about other positions available within Mr. Landry's reasonable geographic region, and Ms. Hollier said nothing was available. Ms. Holmes closed her file on Mr. Landry because she was contacted by Lofton and informed that the independent medical examination determined that Mr. Landry could return to work without restrictions, so her services were no longer needed.

Carrie Sonnier, Mr. Landry's direct supervisor, testified that an unarmed security guard is instructed not put hands on people. But if the guard does decide that force is necessary, he is to use the least amount of force necessary to gain compliance.

Jaran Sonnier, a field supervisor with Lofton, also conducts training and personally trained Mr. Landry. He testified that unarmed security guards are told

that they are not supposed to restrain people. Use of force is a last resort and can only be applied in the case of a felony or if a person's life is in imminent danger.

> The analysis we must undertake "is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage." *Poissenot*, 56 So.3d at 174. We are also mindful that factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of review. *Id.*; *Banks*, 696 So.2d at 556; *Smith v. Louisiana Dep't of Corrections*, 93–1305 (La.2/28/94), 633 So.2d 129, 132. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Poissenot*, 56 So.3d at 174; *Banks*, 696 So.2d at 556; *Stobart v. State*, 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Banks*, 696 So.2d at 556 (citing *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990)).

*Clay*, 91 So.3d at 543(alteration in original).

Affirming a WCJ's finding, this court in *Montgomery v. Lafayette Parish School Board*, 09-643, p. 7 (La.App. 3 Cir. 12/9/09), 31 So.3d 1071, 1075, *writ denied*, 10-1069 (La. 9/3/10), 44 So.3d 686, agreed that a security guard position was not "suitable" or "available" when there was the possibility of altercations that could cause injury to the claimant.

In the present case, we find that the WCJ was manifestly wrong in his decision that Mr. Landry failed to prove his inability to earn 90% or more of his pre-injury wages. We agree with the WCJ that Mr. Landry is willing to return to work for Lofton. But the WCJ failed to address whether the job available was "suitable" for Mr. Lofton. While Mr. Landry is not supposed to engage in physical altercations as an unarmed security guard, everyone who testified agreed that there

is a possibility Mr. Landry may have to physically engage someone. As a matter of fact, his present workers' compensation claim is based on an injury from that very type of situation. Both Dr. Henry and Dr. Butaud agreed that the job was not "suitable" if Mr. Landry was faced with a situation where he would have to physically engage someone. Furthermore, Ms. Hollier stated that the job would require occasional lifting of fifty pounds, which is above the limitation of lifting no more than thirty pounds placed on Mr. Landry by Dr. Henry. Ms. Hollier also told Ms. Holmes that there were no other jobs at Lofton in Mr. Landry's geographical region. Furthermore, Ms. Holmes was not able to identify any jobs within Mr. Landry's restrictions and capabilities. Mr. Landry clearly established that he is unable to earn 90% of his wages, and there is no evidence controverting it.

Therefore, we find that Mr. Landry is entitled to SEB from the date the benefits were discontinued, May 16, 2019, at the rate of $240.69 per week, which was the rate the parties stipulated he was previously receiving.

## PENALTIES AND ATTORNEY FEES

Mr. Landry has also requested penalties and attorney fees arguing that the termination of his benefits was arbitrary and capricious.

Pursuant to La.R.S. 23:1201(I), an employer who arbitrarily and capriciously discontinues payment of benefits, without probable cause, is subject to a penalty not to exceed $8,000 and reasonable attorney fees. Furthermore, attorney fees are not subject to the limitation set forth in La.R.S. 23:1141.

> Awards of penalties and attorneys' fees in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. *Williams v. Rush Masonry, Inc.*, 1998–2271 (La.6/29/99), 737 So.2d 41, 46. Although the Worker's Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. *Id.* "Arbitrary and capricious behavior consists of willful

7

and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Brown v. Texas–LA Cartage, Inc.*, 1998–1063, p. 8–9 (La.12/1/98) 721 So.2d 885, 890

*Iberia Med. Ctr. v. Ward*, 09-2705, pp. 18-19 (La. 11/30/10), 53 So.3d 421, 433-34.

The Defendants discontinued benefits based on a hypothetical to Dr. Butaud concerning his return to work as an unarmed security guard for Lofton. In the hypothetical, Mr. Landry would never have to physically engage people and would only have to lift a maximum of five pounds. Dr. Butaud agreed that this would be an appropriate job. However, this job is not the job that was available. Based on Ms. Hollier's description of the job, Mr. Landry may have to restrain someone even if he was not required to by Lofton and would have to lift fifty pounds on occasion.

Discontinuance of benefits based on a hypothetical job description that was not actually available was arbitrary and capricious. Therefore, we find a penalty in the amount of $2,000 is appropriate. Considering the amount of work performed in pursuing this case at the trial level and in successfully pursuing a claim on appeal, we find an award of $10,000 for attorney fees is appropriate.

For the reasons stated in this opinion, we reverse the judgment of the Office of Workers Compensation denying Robert Landry supplemental earnings benefits and award him supplemental earnings benefits at the rate of $240.69 per week from the date benefits were discontinued on May 16, 2019. We also award penalties in the amount of $2,000 and attorney fees in the amount of $10,000. All costs at the trial and appellate levels are assessed to Lofton Security Services, Inc., and Zurich American Insurance Company.

**REVERSED AND RENDERED.**

8